UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE PHIPPS ROBINSON,

               Plaintiff,

v.

JODI DeANGELO,
M. MATES,
JEFFREY HOUCK, and
DYLAN SCHATZ,

               Defendants.

Case No. 2:23-cv-10255
District Judge Susan K. DeClercq
Magistrate Judge Anthony P. Patti

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
MDOC DEFENDANTS HOUCK AND SCHATZ'S MOTION FOR
SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 15)**

**I.     RECOMMENDATION**:  The Court should **DENY** MDOC Defendants

Houck and Schatz's motion for summary judgment on the basis of exhaustion

(ECF No. 15).

**II.    REPORT**

    **A.     Background**

       Tyrone Phipps Robinson was paroled from the Michigan Department of

Corrections (MDOC) on December 12, 2023 and is currently at a private address.

(*See* www.michigan.gov/corrections, "Offender Search," last visited July 12, 2024;

ECF No. 22.)  In February 2023, while located at the MDOC's Woodland Center

Correctional Facility (WCC), Robinson filed the instant lawsuit concerning the alleged events of September 29, 2022 at WCC.  (ECF No. 1, ¶ 8.)  Robinson originally named four defendants.  (*Id*., ¶¶ 4-7.)  However, on March 30, 2023, the Court summarily dismissed with prejudice Defendants Jodi DeAngelo (WCC Warden) and M. Mates (WCC Deputy Warden).  (ECF No. 4.)  Therefore, only Defendants Jeffrey Houck and Dylan Schatz (WCC Correctional Officers) remain.[1]

### B.    Pending Motion

This case has been referred to me for pretrial matters.  (ECF No. 10.)  Currently before the Court is MDOC Defendants Houck and Schatz's September 21, 2023 motion for summary judgment on the basis of exhaustion (ECF No. 15), as to which Plaintiff filed a timely response (ECF Nos. 16, 18), and Defendants filed a reply (ECF No. 19).[2]  Defendants' motion is ready for decision.

---

[1] Although this case was referred to the *Pro Se Prisoner Early Mediation Program* and scheduled for an August 22, 2023 mediation conference (ECF Nos. 5, 7), on July 12, 2023, the Court granted Plaintiff's request to lift the stay, lifted the stay, and directed service (ECF Nos. 8, 9).  In a letter dated September 19, 2023, Plaintiff claims he was called to participate in mediation on August 22, 2023 (even though it had been cancelled), and he sought to know if there had been any development in his case, as he had not received any correspondence.  (ECF No. 17.)  The Court assumes this report will provide Plaintiff with the status he seeks.

[2] Plaintiff also submitted a "reply to response," dated October 30, 2023 (ECF No. 20), but it was stricken on November 2, 2023 as an unauthorized sur-reply brief (ECF No. 21).

### C.   Discussion

### 1.   Plaintiff's verified pleading

Plaintiff signed his complaint under penalty of perjury.  (ECF No. 1, PageID.5); therefore, it constitutes an unsworn declaration.  28 U.S.C. § 1746. He alleges that, on September 29, 2022, he was "assigned to monitor Prisoner Hall, due to him being on a 'hunger strike'."  (ECF No. 1, ¶ 8.)  According to Plaintiff, Hall had a "management plan," which required him "to be in restraints every time he exit[ed] his cell[,]" and Defendants Houck and Schatz "were aware of . . . Hall's restraint requirements[,]" presumably because Hall's cell door was "clearly marked with a big red sign that reads[,] 'Restraints'[,]" and Hall's management plan "was easily accessible[.]"  (*Id*., ¶¶ 9, 10, 16.)

Plaintiff alleges that, during lunch, Defendants Houck and Schatz escorted Hall "from his cell . . . across the base[] to a waiting module[,]" but they did not place him in "restraints[.]"  (*Id*., ¶ 11.)  Plaintiff alleges that, without provocation, Hall "proceeded to assault [P]laintiff[,]" after which Plaintiff "required medical attention . . . ."  (*Id*., ¶ 12.)  Plaintiff alleges he "was diagnosed by a doctor with musculoskeletal injury as a result of the assault by inmate Hall."  (ECF No. 1, ¶ 13.)  In support of his allegations, Plaintiff attaches:  (a) the declaration of Dante Webb (#359162) (ECF No. 1, PageID.9), who claims to have witnessed the incident in question; and, (b) an October 6, 2022 MDOC Kite Response (*id*.,

3

PageID.7), which indicates a nurse visit was scheduled and notes "musculoskeletal" under "comments."  (*See also id*., ¶¶ 13, 20.)

Plaintiff's legal claims are based on Eighth Amendment deliberate indifference, Fourteenth Amendment due process, and negligence.  (ECF No. 1, ¶¶ 23-33; *see also id*., ¶¶ 17-19.)  Among other things, Plaintiff alleges that Defendants Schatz and Houck "violated [his] due process rights by not placing inmate Hall in restraints."  (*Id*., ¶ 17.)  Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  (*Id*., ¶¶ 34-40; *see also id*., ¶¶ 1, 33.)

### 2.    Exhaustion of available administrative remedies

Defendants argue that Plaintiff "did not properly exhaust administrative remedies on his claims against MDOC Defendants Houck or Schatz."  (ECF No. 15, PageID.59, 69.)  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement . . . requires 'proper' exhaustion, which includes compliance with a state agency's timeliness deadlines."  *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function

4

effectively without imposing some orderly structure on the course of its

proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).  Nonetheless, "[a]

prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 578

U.S. 632, 636 (2016).

      **a.**     **WCC-22-10-0213-28I**

The relevant version of the MDOC's grievance procedure explains that

"[c]omplaints filed by prisoners regarding grievable issues . . . serve to exhaust a

prisoner's administrative remedies only when filed as a grievance through all three

steps of the grievance process in compliance with this policy."  MDOC PD

03.02.130 ¶ C (Mar. 18, 2019).  (ECF No. 15-2, PageID.76.)  As of April 12, 2023,

*i.e.*, approximately two months after Plaintiff initiated this lawsuit, Plaintiff's

MDOC Prisoner Step III Grievance Report listed only five grievances pursued

through Step III, only two of which concerned WCC.  (ECF No. 15-3, PageID.87-

88.)  Moreover, the timing of the two WCC Step I grievances – one of which was

received before the event in question – suggests that only one could relate to the

allegations in this case.  (*Id.*)

Plaintiff's Step I grievance form regarding the alleged events of September

29, 2022 was received at Step I on October 5, 2022 and assigned Grievance

Identifier WCC-22-10-0213-28I.  (ECF No. 1, PageID.11.)  In response to the

question(s), "[w]hat attempt did you make to resolve this issue prior to writing this

grievance[,]" and, "[i]f none, explain why[,]" Plaintiff wrote: "There was no avenue to resolve issue, protocol failed." (*Id*.) Then, within the text of the grievance, Plaintiff states, *inter alia*: "Officer Shantz and two (2) other officers (one being OJT), failed to restrain [Prisoner] Hall and prisoner Hall took that opportunity to assault me . . . , without provocation." (*Id*.)

### b. Step I rejection for failure to attempt to resolve the issue with staff

Grievance Coordinator Mikat rejected WCC-0213 at Step I, explaining that Plaintiff "failed to attempt to re[s]olve issue with staff." (*Id*.) "A grievance shall be rejected by the Grievance Coordinator if . . . [t]he grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance unless prevented by circumstances beyond his/her control . . . ." MDOC PD 03.02.130 ¶ J(4). (ECF No. 15-2, PageID.77.) "As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, 'a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust.'" *Burnett v. Howard*, No. 2:09-CV-37, 2010 WL 1286256, at *1 (W.D. Mich. Mar. 30, 2010) (quoting *Grear v. Gelabert*, No. 07-cv-203, 2008 WL 474098, at *2 n. 1 (W.D. Mich. Feb.15, 2008)).

Based on this guidance, Defendants argue that WCC-0213 "did not exhaust any claims against Houck or Schatz[,] because it was rejected *through* the

6

grievance process." (ECF No. 15, PageID.70 (emphasis added).)[3]  Put another

way, Defendants contend WCC-22-10-0213-28I "was rejected at Step I, *and the*

*rejection* was affirmed *through* Step III." (ECF No. 15, PageID.71 (emphases

added).)

> ### c.     Step II appeal challenging the propriety of the Step I rejection

Plaintiff's Step II appeal challenged the propriety of the Step I rejection.  By

way of background, as Plaintiff alleges in his pleading, he "attempted to resolve

this issue with all the named defendants[,]" further alleging that, "when confronted

with the facts of the assault . . . [,]" former Defendant Mates "gave plaintiff a direct

order to 'sit down and be quiet'." (ECF No. 1, ¶ 14.)  Plaintiff alleges he then filed

his grievance, "alleging defendants failed to protect him from being assaulted by

inmate Hall[;]" still, Grievance Coordinator Mikat rejected the grievance, because

Plaintiff "did not attempt to resolve this issue with staff." (*Id.*, ¶¶ 15, 21.)

Plaintiff alleges he "clearly attempted to resolve[] the issue with all the

defendants." (ECF No. 1, ¶ 16.)  Consistent with these allegations, Plaintiff's Step

II appeal explained:  "It was Officer Houck, Officer S[c]hatz, that violated my 8th

Amendment right to be free from cruel and unusual punishment.  *When I tried to*

---

[3] On three occasions Defendants cite "WCC-218," (*see* ECF No. 15, PageID.70-
71); these are scrivener's errors (*see id.*, PageID.62; ECF No. 15-3, PageID.87), as
admitted by Defendants in their reply (*see* ECF No. 19, PageID.110 n.1).

*get answers[,] the Deputy Warden/Mates, told me to sit down and be quiet.*
*Therefore[,] it was staff that allowed no avenue to resolve this issue.*"  (ECF No. 1,
PageID.13 (emphasis added).)

### d.     Warden DeAngelo's merits-based Step II response

Plaintiff's Step II grievance appeal was received on October 24, 2022.  (*Id.*)
In her October 27, 2022 Step II Appeal Response, former Defendant Warden
DeAngelo stated:  "I have reviewed your Step I Grievance, the Step I Response,
and your Step II Reason for your Appeal[.]"  (*Id.*, PageID.15.)  DeAngelo
summarized the Step II investigation as follows:  "Reviewed Step I.  Obtained
prisoner Hall's management plan.  Confirmed issue was being address[ed]."  (*Id.*)
She concluded:  "This issue is [being] looked into/handled administratively."  (*Id.*)

In Plaintiff's motion response, he contends DeAngelo "did not reject [his]
grievance but in fact confirmed the issue," *i.e.*, "[t]he MDOC clearly addressed the
issue."  (ECF No. 18, ¶ 6.)  I agree.  Far from "rejecting" Plaintiff's Step II appeal
(for allegedly failing to attempt resolution prior to filing the Step I grievance),
Warden DeAngelo moved on from Grievance Coordinator Mikat's initial posture
to addressing the issues on the merits at Step II.  As the Supreme Court has
explained, "[t]he level of detail necessary in a grievance to comply with the
grievance procedures will vary from system to system and claim to claim, but it is
the prison's requirements, and not the PLRA, that define the boundaries of proper

8

exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).  (*See* ECF No. 15,

PageID.66; ECF No. 18, ¶ 18.)  Moreover, "[a]n inmate exhausts a claim by taking

advantage of each step the prison holds out for resolving the claim internally and

by following the 'critical procedural rules' of the prison's grievance process to

permit prison officials to review and, if necessary, correct the grievance 'on the

merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir.

2010) (quoting *Woodford,* 548 U.S. at 90, 95) (internal quotation marks omitted).

(*See* ECF No. 18, ¶ 10.)

Citing *Jones*, *Reed-Bey*, and other cases, Plaintiff has convincingly argued

that DeAngelo "addressed the merits of Plaintiff's grievance by confirming the

issue and also rejecting the issue."  (ECF No. 18, ¶¶ 25, 26.)  In effect, DeAngelo's

Step II response, even if implicitly, dispenses with the Step I reason for rejection

by proceeding to address Plaintiff's Step II appeal on the merits.  Put another way,

"[t]he prison had a fair shot a[t] correcting its own alleged mistakes[,]" "[i]t

created a valuable administrative record[,]" and "the defendants are merely seeking

to insulate their merits-base[d] grievance denial from Federal review."  (ECF No.

1, ¶ 27.)  *See Sweezer v. Heyns,* No. 13-CV-14382, 2015 WL 417532, *4 (E.D.

Mich. Jan. 31, 2015) (Murphy, J.) ("The prison has had a fair shot at correcting its

own alleged mistakes.  It has created a valuable administrative record.  And, as in

Reed–Bey, the Defendants are merely seeking to insulate their merits-based grievance denial from federal review.")

Defendants' attempt to defend their position is unavailing, as their response merely states, "*regardless of what happened at Step II* in WCC-213, the rejection was affirmed at Step III.  As such, WCC-213 did not exhaust any claims."  (ECF No. 19, PageID.110 (emphasis added).)  This argument does nothing to address the fact that "[a] grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I . . . ."  MDOC PD 03.02.130 ¶ DD.  (ECF No. 15-2, PageID.81.)  Perhaps the MDOC anticipated this predicament, as the subsequent, current version of the policy additionally provides:  "If a pre-Step II procedural error is identified at Step II, the Step II appeal shall not be answered and the Step I response shall be returned to Step I for an amended response to correct the procedural error.  All rights and timeframes for appeal of the amended Step I grievance shall be reset."  MDOC PD 03.02.130 ¶ JJ (effective Sept. 25, 2023).  In any event, contrary to Defendants' contention that WCC-22-10-0213-28I "was rejected at Step I, and the rejection was affirmed *through* Step III[,]" (ECF No. 15, PageID.71), DeAngelo neither affirmed the "failure to attempt resolution" basis of the Step I rejection, nor did she reject Plaintiff's Step II appeal.  Moreover, the Court does not just disregard what actually happened at Step II, despite Defendants' invitation to do so.  Whatever misunderstanding there may have been

about Plaintiff's efforts to resolve the matter before filing a Step I grievance, the merits were addressed at Step II, thereby overruling – even if implicitly – the initial, Step I rejection.

### e.    The Step III response "upheld" the rejection

Following DeAngelo's Step II merits-based response, Plaintiff completed a Step III appeal, which was received on November 4, 2022.  (ECF No. 1, PageID.13, 14, 15.)  Somewhat oddly, Plaintiff's Step III appeal "upheld" the "rejection," further explaining, "[t]his decision cannot be appealed within the department."  (*Id.*, PageID.13, 14.)  The Step III response was mailed on November 16, 2022.  (*Id.*, PageID.14.)

As Plaintiff contends in his motion response, he "fully [took] advantage of each step the prison held out for resolving the claim internally and by following the critical procedural rules of the grievance process to permit prison officials to review and if necessary correct the grievance on the merits."  (ECF No. 18, ¶¶ 25.) *See also Woodford*, 548 U.S. at 90-91; *Reed-Bey*, 603 F.3d at 324.  Defendants should not benefit from a Step III response that upholds a Step I rejection when the respondent has "skipped over" or "ignored" a Step II merits-based response that essentially overrules the purported Step I rejection.  That would be akin to "insulat[ing] the[] merits-based grievance denial from federal review."  *Sweezer*, 2015 WL 417532, *4.

11

**f.      Absence of Defendant Houck's name at Step I**

One additional issue merits discussion.  In their motion, Defendants

acknowledge that Step I of WCC-22-10-0213-28I mentions "Officer Shantz and

two (2) other officers (one being OJT) . . . ."  (ECF No. 1, PageID.11; *see also*

ECF No. 15, PageID.62.)  In arguing that Plaintiff failed to exhaust "any claims

against Houck or Schatz[,]" Defendants generically point out, *inter alia*, that

Plaintiff needed to "file a Step I grievance where he named each individual

defendant and raised – as issues being grieved – the claims asserted in the

complaint[.]"  (ECF No. 15, PageID.69.)  They also note that, "[u]nder the

Department of Corrections' procedural rules, inmates must include the '[d]ates,

times, places and names of all those involved in the issue being grieved' in their

initial grievance."  *Reed-Bey*, 603 F.3d at 324 (quoting MDOC PD 03.02.130 ¶ T

(effective Dec. 19, 2003).  (*Id.*, PageID.70.) There is a similar provision in the

relevant version of the MDOC's grievance policy:  "Dates, times, places, and

names of all those involved in the issue being grieved are to be included."  MDOC

PD 03.02.130 ¶ S.  (*See* ECF No. 15-2, PageID.79.)  Yet – notwithstanding

Defendants' aforementioned acknowledgment within the "Statement of Facts" that

"Schatz" was "grieved at Step I" of WCC-22-10-0213-28i (*id.*, PageID.62), related

generic statement, and related case citation – it is not until their reply that they

argue that: "Robinson named Schatz but did not name Houck at Step I in WCC-213[,]" and, therefore, "Houck is subject to dismissal on this separate basis." (ECF No. 19, PageID.113.)

There are several reasons why the issue of whether Houck was named in the Step I grievance does not aid Defendants' cause. First, "even well-developed arguments raised for the first time in a reply brief come too late." *Stewart v. IHT Ins. Agency Grp.*, LLC, 990 F.3d 455, 457 (6th Cir. 2021) (citing *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018)). Thus, even though Plaintiff's response touched upon the issue, as will be seen below, the Court need not address an argument Defendant first makes in its reply.

Second, the MDOC did not reject WCC-213 for failure to identify the allegedly responsible individuals as required by MDOC PD 03.02.130 ¶ S. As the parties seem to acknowledge: "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Reed-Bey*, 603 F.3d at 325. Indeed, "[t]he rules serve the *State's* interests: its interest in creating a prison grievance system, its interest in reviewing a complaint before another sovereign gets involved and its interest in deciding when to waive or enforce its own rules. And the State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim." *Id. See also*

13

*Holloway v. McLaren*, 2016 U.S. App. LEXIS 14644, *5 (6th Cir. Apr. 7, 2016) ("Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion.").  (ECF No. 18, ¶ 16; ECF No. 19, PageID.112.)

Finally, Plaintiff's Step I grievance in WCC-22-10-0213-28I *did provide* sufficient notice.  Plaintiff – who seems to have caught a faint whiff of this issue within Defendants' motion – addressed it in his response (*see* ECF No. 18), pointing out that even if Houck was not expressly named at Step I, Plaintiff's Step I grievance provided "sufficient notice" as to the individuals allegedly involved in the incident in question.  *See, e.g., Kirschke v. Schooley*, No. 20-11118, 2022 WL 2192927 (E.D. Mich. June 17, 2022) (Roberts, J.) ("Although Kennedy was not named in the grievance, she and administrators had sufficient notice of Kirschke's allegations.").  (ECF No. 18, ¶ 24.)  This Court has previously explained:

> Although [Plaintiff]'s grievance did not include [Defendant]'s name, it put prison administration on notice and gave all a fair opportunity to address the alleged [incident].  There will always be instances where an inmate wants to file a grievance and may not know all of the involved parties until a later date.  Inmates are under a strict timeline – 10 days – to file a grievance.  ****  Inmates are not foreclosed from relief simply because they failed to include one official while attempting to comply with strict deadlines given the resources at their disposal.  ****  [Plaintiff]'s grievance against the named Defendants

14

> included all the information needed for the coordinator to assess the
> merit of the alleged [incident].

*Kirschke*, 2022 WL 2192927, at *6.  (ECF No. 18, ¶ 23.)  When Robinson wrote,

"Officer Shantz and two (2) other officers (one being OJT), failed to restrain

[Prisoner] Hall . . . [,]" (ECF No. 1, PageID.11), prison administrators or prison

officials had sufficient information to identify those allegedly at fault.[4]

Defendants' arguments *in reply* are, on balance, unavailing.  To begin,

Defendants contend that Plaintiff misunderstands *Jones*, which concerned a prior

version of MDOC PD 03.02.130 (effective Nov. 1, 2000), observed that "[n]othing

in the MDOC policy itself supports the conclusion that the grievance process was

improperly invoked simply because an individual later named as a defendant was

not named at the first step of the grievance process[,]" and held that "exhaustion is

not per se inadequate simply because an individual later sued was not named in the

grievances." *Jones*, 549 U.S. at 206, 218, 219.  (ECF No. 19, PageID.111-112.)

As Defendants accurately note – citing a post-*Jones* Sixth Circuit unpublished case

– "a plaintiff generally fails to exhaust administrative remedies by failing to

include an official's name in a grievance if it is required by the applicable

grievance procedures[.]" *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011)

---

[4] Incidentally, Plaintiff filled in this "blank" in his Step II and Step III appeals,
each of which mentions Houck and Schatz (Schatz).  (ECF No. 1, PageID.13.)
(*See also* ECF No. 18, ¶¶ 4, 7.)

(citing *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir.2009)).  (ECF No. 19, PageID.111.)  As noted above, MDOC PD 03.02.130 ¶ S requires "names of all those involved in the issue being grieved . . . ."  (ECF No. 15-2, PageID.79.)

Yet, even if Plaintiff, a non-lawyer, misunderstands *Jones*, the second part of Defendants' argument – *i.e.*, Plaintiff misunderstands *Reed-Bey* – is unavailing.  In *Reed-Bey*, the Sixth Circuit concluded that, "[b]ecause the Michigan Department of Corrections opted to dismiss [Reed's] grievance on the *merits* rather than invoke its procedural bar," – *i.e.*, addressing it on the merits rather than rejecting it for failure "to identify the 'names of all those involved'" – "Reed–Bey exhausted his claim."  *Reed-Bey*, 603 F.3d at 323 (emphasis added).  To clarify *Reed-Bey*, Defendants cite *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019) ("In addition to Brown's not mentioning the defendants at steps I or II of the grievance process, the step III grievance response did not mention any of the defendants.  Accordingly, because Brown failed to name Rivard, McCullick, Parsons, and Williams at step I of this grievance, he failed to exhaust his claims against them.").

Under these circumstances, Plaintiff's failure to name Houck at Step I does *not* entitle Houck "to dismissal on this separate basis."  (ECF No. 19, PageID.113.)

### D.    Conclusion

In the end, the Court must make a decision based on the evidence before it,
which includes Plaintiff's verified complaint and its exhaustion-related
attachments (ECF No. 1) and the relevant MDOC policy (ECF No. 15-2), as well
as the Affidavit for Step III Grievances, Step III Grievance Report, and Grievance
WCC-22-10-2130-28l attached to the MDOC Defendants' motion (ECF No. 15-3).
Consideration of this evidence reveals that Defendants are not "entitled to
judgment as a matter of law[,]" – nor a trial on this specific factual issue – because
there is no "genuine dispute" as to exhaustion.  Plaintiff has shown he *properly*
exhausted his available administrative remedies in accordance with 42 U.S.C. §
1997e(a) and as contemplated by *Woodford*, *Jones*, and *Siggers*, particularly where
the MDOC chose to "waive [rather than] enforce its own rules."  *Reed-Bey*, 603
F.3d at 325.  Accordingly, the Court should **DENY** MDOC Defendants Houck and
Schatz's exhaustion-based motion for summary judgment (ECF No. 15).

### III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and
Recommendation, but are required to file any objections within 14 days of service,
as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule
72.1(d).  Failure to file specific objections constitutes a waiver of any further right
of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6ᵗʰ Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6ᵗʰ Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6ᵗʰ Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 15, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE